IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 2, 2016

## JAMES A. LONG, ET AL. v. CHARLES D. LEDFORD, ET AL.

**Appeal from the Circuit Court for Unicoi County**
**No. 2515-CV-8151  James E. Lauderback, Judge**
_____

**No. E2016-00451-COA-R3-CV-FILED-SEPTEMBER 30, 2016**
_____

In this bench trial following a de novo appeal from the general sessions court, the trial court awarded Appellees a judgment of $2,308.28 representing the principal and interest due on a promissory note. Appellants raise several issues concerning the general sessions court proceeding as errors on appeal. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J. W.S., delivered the opinion of the court, in which CHARLES D. SUSANO Jr., and RICHARD H. DINKINS, JJ., joined.

Charles D. Ledford and Vivian Ledford, Erwin, Tennessee, Pro se.

James Stephen Pate, Erwin, Tennessee, for the appellees, Patricia Long, and James A. Long.

## OPINION

### Background

On June 5, 2015, Plaintiffs/Appellees James A. Long and Patricia Long (together, "Appellees") filed a civil warrant in the Unicoi County General Sessions Court ("general sessions court") against Defendants/Appellants Charles D. Ledford and Vivian Ledford (together, "Appellants"). The civil warrant alleged that Appellants were liable to Appellees on a $2,170.57 promissory note and for $1,800.00 for rent and a security deposit. The general sessions court heard the matter on June 30, 2015, and entered a judgment on the same day in favor of Appellees in the amount of $3,985.50.

Appellants timely appealed to the Unicoi County Circuit Court ("circuit court" or "trial court"). A trial was held on January 25, 2016, with only Mr. Long and Mr. Ledford testifying. While Appellees were represented by counsel, Appellants appeared pro se. Appellees introduced the promissory note showing a debt in the principal amount of $1,158.74 plus 10% annual interest. The promissory note stated: "If this note is paid in full prior to one year, the 10% interest will be paid in the full amount for one year's interest." The promissory note contains Appellants' purported signatures.

According to Mr. Long's testimony, Appellants signed the promissory note in conjunction with another transaction wherein Appellees loaned Appellants approximately $200,000.00 so that Appellants could satisfy a tax lien on a home Appellants owned in Florida. The $200,000.00 loan was secured by a deed of trust on Appellants' property. Appellees introduced a document entitled "Mortgage Deed" executed by the parties that evidenced a $202,645.47 loan from Appellees to Appellants secured by Appellants' Florida property. Mr. Long testified that the Internal Revenue Service ("IRS") approved the loan and agreed to subordinate its tax lien to Appellees' deed of trust. Because the IRS would not allow any of the loan proceeds to be used to cover closing costs on the loan, however, Mr. Long testified that Appellants signed the promissory note in the amount of $1,158.74 to cover the closing costs. A closing statement prepared by an attorney was introduced into the record showing closing costs of $1,158.74 on a $202,645.47 loan.[1] Under Mr. Long's understanding, the promissory note was intended to have been paid one year from the date of execution, the same term the parties utilized on the larger loan. According to Mr. Long, Appellants never paid any amount to satisfy the debt represented by the promissory note.

Mr. Long testified that after Appellants also refused to pay the approximately $200,000.00 loan, Appellees were forced to foreclose on the property securing the note. Mr. Long stated that at the time of the foreclosure, the property in question was leased by a tenant. According to Mr. Long, shortly before the foreclosure, the tenant paid $1,800.00 representing first month's rent and a security deposit. After the foreclosure, Mr. Long testified that the tenant requested the return of their first month's rent and security deposit, but Mr. Long testified that the amount requested had not been returned to the tenant. Rather, Mr. Long testified that the tenant remained in the property for the term of the initial lease and had recently renewed the lease with the property's new owner.

Mr. Ledford did not deny that he and his wife had entered into the approximately $200,000.00 loan with Appellees. According to Mr. Ledford, he attempted to sell the property at issue to pay back the loan, but the property did not sell. Mr. Ledford testified that Appellees eventually foreclosed on the property in order to capitalize on Florida law allowing them substantial interest on the loan in the event of a foreclosure. Although Mr. Ledford

---

[1] The attorney who prepared the closing statement was not the attorney that represented Appellees at trial or on appeal.

initially opposed the foreclosure, Appellees were eventually allowed to foreclose on the property by agreement of the parties.

With regard to the promissory note at issue, Mr. Ledford testified that "[Mr. Long] dug up these old notes that were supposed to have been already paid along with that the property he got [sic]." Mr. Ledford also took issue with Appellees' contention that the promissory note was a balloon note. Rather, Mr. Ledford contended that without specific terms regarding payment dates, addresses, phone numbers, or an expiration date, the promissory note offered by Appellees was "just worthless." Mr. Ledford also denied that he signed the promissory note or that the signature contained on the promissory note was his. Instead, Mr. Ledford testified that he was "in doubt" as to whether he signed the promissory note. Later, however, Mr. Ledford stated that he had never seen the promissory note prior to trial.

The trial court entered a memorandum opinion on January 27, 2016. Therein, the trial court ruled that Mr. Ledford's claim that he could not recall whether he signed the promissory note was not credible. The trial court further found that Appellants' signatures on the promissory note were virtually identical to their undisputed signatures on the closing statement and Mortgage Deed. The trial court therefore ruled that Appellants were liable on the promissory note for the principal amount plus interest. The trial court, however, denied Appellees' request for $1,800.00 in damages in rent and security deposit, as the trial court ruled that there was insufficient proof that Appellees had ever actually been required to return these funds to the tenant. Finally, the trial court denied Appellees' request for attorney's fees, concluding that the promissory note did not contain an attorney's fees clause. The trial court directed that Appellees prepare a judgment in the amount of $2,308.28, which order was entered on February 26, 2016. Appellants thereafter filed a timely notice of appeal.

### Issue Presented

Appellants raise one issue in this case: Whether the trial court erred in finding that Appellants were liable on the promissory note.

### Standard of Review

In this appeal from a bench trial, we review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is *de novo*. ***Blair v. Brownson***, 197 S.W.3d 681, 684 (Tenn. 2006) (citing ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000)). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***4215 Harding Road Homeowners Ass'n. v. Harris***, 354 S.W.3d 296, 305 (Tenn. Ct. App. 2011); ***Walker v. Sidney Gilreath & Assocs.***, 40 S.W.3d

66, 71 (Tenn. Ct. App. 2000). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." **Brooks v. Brooks**, 992 S.W.2d 403, 405 (Tenn. 1999).

When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the manner and demeanor of the witnesses while testifying is in a far better position than this Court to decide those issues. **In re Arteria H.**, 326 S.W.3d 167, 176 (Tenn. Ct. App. 2010) (citing **McCaleb v. Saturn Corp.**, 910 S.W.2d 412, 415 (Tenn. 1995)). If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. **Franklin County Bd. Of Educ. v. Crabtree**, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010) (citing **Jones v. Garrett**, 92 S.W.3d 835, 838 (Tenn. 2002)).

## Discussion

As an initial matter, we note that Appellants appear before this Court pro se, as they did before in the trial court. It is well-settled that pro se litigants must comply with the same standards to which lawyers must adhere. **Watson v. City of Jackson**, 448 S.W.3d 919, 926 (Tenn. Ct. App. 2014). As explained by this Court:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

**Jackson v. Lanphere**, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting **Hessmer v. Hessmer**, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)). With the foregoing in mind, we turn to address the arguments set forth by Appellants.

As we perceive it, Appellants first argue that the trial court erred in relying on the promissory note where Appellants failed to introduce the original note. Instead, Appellants contend that the promissory note introduced was not the one signed by Appellants. The trial court, however, specifically found that the promissory note introduced into evidence was signed by Appellants based upon Appellants' signatures on other documents. Tennessee courts have previously held that fact-finders may compare signatures on different documents to determine whether there is "such similarity that one can easily infer that both were written

by the same author[.]" ***State v. Dedmon***, No. 01C01-9506-CC-00209, 1996 WL 518274, at *4 (Tenn. Crim. App. Sept. 13, 1996) (citing Tenn. R. Evid. 901(b)(3) (noting that the trier of fact is entitled to compare the writings relative to the identification of the author). Furthermore, the trial court specifically found that Mr. Ledford's denial that he had executed that document to lack credibility. *See* ***Taylor v. McKinnie***, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *4 (Tenn. Ct. App. Aug. 5, 2008) ("We give 'considerable deference' to a trial court's determinations with regard to witness credibility.") (quoting ***Richards v. Liberty Mut. Ins. Co.***, 70 S.W.3d 729, 733 (Tenn. 2002)). Finally, Appellants cite no law to suggest that the trial court's reliance on the promissory note introduced by Appellees was error. *See* ***Bean v. Bean***, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue."). Accordingly, we discern no error in the trial court's reliance on the proffered promissory note.

Appellants next argue that Appellees failed to comply with Tennessee Code Annotated Section 24-5-107, which provides:

> (a) An account on which action is brought, coming from another state or another county of this state, or from the county where suit is brought, with the affidavit of the plaintiff or its agent to its correctness, and the certificate of a state commissioner annexed thereto, or the certificate of a notary public with such notary public's official seal annexed thereto, or the certificate of a judge of the court of general sessions, with the certificate of the county clerk that such judge is an acting judge within the county, is conclusive against the party sought to be charged, unless that party on oath denies the account or except as allowed under subsection (b).
> (b) The court shall allow the defendant orally to deny the account under oath and assert any defense or objection the defendant may have. Upon such denial, on the plaintiff's motion, or in the interest of justice, the judge shall continue the action to a date certain for trial.

We discussed the purpose of Section 24-5-107 in ***State ex rel. Finkelstein, Kern, Steinberg, and Cunninham v. Donald***, No. 02A01-9807-CH-00203, 1999 WL 236407 (Tenn. Ct. App. 1999):

> Our courts have noted that the statute was intended to furnish an easy and inexpensive mode for collecting debts when they are justly due and no real defense exists, unless the account is denied on oath, and thus the plaintiff is put on notice to make the necessary proof. ***Foster & Webb v. Scott County***, 65 S.W. 22 (1901). The statute is quite clear that in the absence of a sworn denial the plaintiff is entitled to judgment on the sworn account. However, where an

action is brought on a sworn account, a denial under oath makes an issue and puts the plaintiff to the proof of the account, and the probated account is not evidence. ***Cumberland Grocery Co. v. York***, 9 Tenn. App. 316 (1929).

***Donald***, 1999 WL 236407, at *4.[2] Thus, the purpose of the statute is to allow a creditor to collect on a debt without the need for a trial where the defendant fails to file a sworn denial. *See **Clark Power Servs., Inc. v. Mitchell***, No. E2007-01489-COA-R3-CV, 2008 WL 2200047, at *3 (Tenn. Ct. App. May 27, 2008) ("Pursuant to the statute, a plaintiff can obtain judgment in a suit on a sworn account without the necessity of calling any witnesses unless the defendant files a sworn denial of the account or appears at the hearing and orally denies the account under oath.").

Regardless of whether Appellees were required to comply with Section 24-5-107, it appears that any purported error in failing to do so was corrected when this case was appealed *de novo* to the trial court. Once there, the trial court held a full evidentiary hearing in which Appellees submitted their evidence, both documentary and testimonial, to support their claim. The trial court found this evidence credible and persuasive. Therefore, any purported error in failing to comply with Section 24-5-107 in the general sessions court was harmless. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). Accordingly, we conclude that this issue is, respectfully, without merit.

Next, Appellants appear to argue that Appellees' claim should be denied because Appellees' original civil warrant alleged that the amount of the promissory note was $2,170.57 plus interest. At trial in the circuit court, however, the promissory note introduced by the Appellees secured a debt of only $1,158.74 plus interest. Again, any error committed by the Appellees regarding their claim in the general sessions court in this particular case was corrected by Appellants' appeal *de novo* to the circuit court. Indeed, it appears that Appellants prevailed on this issue, as their damages were reduced from the original general sessions court judgment. Accordingly, this issue is likewise, respectfully, without merit.

Finally, Appellants, in the conclusion section of their appellate brief, argue that the trial court erred in finding that Appellees' claim was brought within the applicable statute of limitations. Appellants' argument on this issue is as follows:

---

[2] The ***Donald*** Opinion is styled as "State of Tennessee ex rel Finkelstein, Kern, Steinberg and **Cunninham**," on the legal database Westlaw. *See **Donald***, 1999 WL 236407, at *1 (emphasis added). In the Opinion, however, the plaintiff is referred to as "State of Tennessee ex rel Finkelstein, Kern, Steinberg and **Cunningham**." ***Id.*** (emphasis added). In order to facilitate future citation of this case through online legal databases, we will refer to this case in the manner in which it is styled.

2. There [sic] Complaint was well past the Statute of Limitations of six years.

3. The Courts have ruled that the Promissory Note (Exhibit 2) R-10 is a demand note.

4. Tennessee Code (47-3-108) (a) (ii) (T.C.A. 28-3-109) shows that the Promissory Note will prevail as a contract which will state under the six year Statutes [sic] of Limitations. (28-3-109)

5. This clearly shows the Statutes [sic] of Limitations is well past the time submitted on their Promissory Note.

Thus, Appellants argue that the six-year statute of limitations contained in Tennessee Code Annotated Section 28-3-109 applies to this case, [3] rather than the ten-year statute of limitations under Tennessee Code Annotated Section 47-3-118(b),[4] applicable to notes payable on demand as defined by Tennessee Code Annotated Section 47-3-108(a).[5]

Even if we were to conclude, as Appellants suggest, that the applicable statute of limitations is six years under Section 28-3-109, we do not agree that Appellees' claim was untimely. Here, the parties executed the contract on November 5, 2008. The only time frame given on the contract was a term of one year. Accordingly, a breach of the contract occurred when Appellants failed to pay their obligation under the promissory note within that time frame. It is well-settled that the statute of limitations in a breach of contract action "begins to run as of the date of the breach." ***Greene v. THGC, Inc.***, 915 S.W.2d 809, 810 (Tenn. Ct. App. 1995). As such, the six-year statute of limitations began to run on November 5, 2009, when Appellants breached the contract by failing to pay their obligation under the promissory note within one year. Appellees filed their civil warrant on June 5, 2015, less than six years from the date that Appellants breached the contract. Their cause of action, therefore, falls well within even the shortest statute of limitations that could be applicable to this action. The

---

[3] Section 28-3-109 provides, in relevant part: "The following actions shall be commenced within six (6) years after the cause of action accrued: . . . (3) Actions on contracts not otherwise expressly provided for."

[4] Section 47-3-118(b) provides:

Except as provided in subsection (d) or (e), if demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within six (6) years after the demand. If no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of ten (10) years.

[5] Section 47-3-108(a) states: "A promise or order is 'payable on demand' if it (i) states that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder, or (ii) does not state any time of payment."

trial court therefore did not err in refusing to dismiss this case based upon the expiration of the statute of limitations.

## Conclusion

The judgment of the Unicoi County Circuit Court is affirmed and this cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellants, Charles D. Ledford and Vivian Ledford, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE