ETERNALIST FOUNDATION, INC., and Rev. Dr. Reza Rezazadeh, Plaintiffs-Appellants,†

v.

CITY OF PLATTEVILLE, City Manager Al Probst, City Council Members (December 11, 1990, Meeting): Patricia Plourde, Andrew Burris, Joseph Lawinger, Merlin Mellor, William Dolan, and City Council Members (May 12, 1996): Kenneth Kilian and Eileen Nickels, Defendants-Respondents.

Court of Appeals

*No. 98–1944. Submitted on briefs January 12, 1999.—Decided March 18, 1999.*

(Also reported in 593 N.W.2d 84.)

†Petition to review denied.

760

761

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Burt P. Natkins* of *Natkins Law Office* of Oregon.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Bradley D. Armstrong, Steven A. Brezinski* and *Rita M. Knauss* of *Axley Brynelson, LLP* of Madison.

Before Eich, Vergeront and Deininger, JJ.

DEININGER, J. The Eternalist Foundation, a religious non-profit corporation, and Rev. Dr. Reza Rezazadeh, one of its founders, appeal a summary judgment granted in favor of the City of Platteville and several city officials.[1] The Foundation sued the City,

---

[1] We will refer to plaintiffs-appellants, collectively, as the Foundation, and to defendants-respondents as the City, except where it is necessary to separately identify one of the parties.

alleging that the City's zoning decisions violated the Foundation's rights under the federal and state constitutions. The City moved to dismiss the Foundation's complaint. The trial court deemed the City's motion to be one for summary judgment and granted it. The Foundation appeals, contending that: (1) the City's motion to dismiss was untimely; (2) the trial court wrongly treated the City's motion to dismiss as one for summary judgment; and (3) its complaint properly alleges constitutional claims for which relief can be granted.

We conclude that the City's motion was timely, and because our review is de novo, any errors the trial court may have committed in applying summary judgment methodology in evaluating the City's motion are of no consequence on appeal. On the basis of our independent review of the Foundation's complaint, we conclude that it fails to state a claim for which relief can be granted. We therefore affirm the trial court's judgment in favor of the City.

## BACKGROUND

The following facts are alleged in the Foundation's amended complaint and are taken as true for purposes of this appeal. Rezazadeh owned a ninety-four-acre parcel of land adjacent to the City of Platteville. The parcel was zoned R–2 under the City's extraterritorial zoning authority, a classification which permitted the development of single- and multi-family housing. The City annexed the ninety-four-acre parcel in May 1978. Rezazadeh agreed to the annexation only because the City had accepted his development plan for the parcel, which included commercial development as well as single- and multi-family housing. A plat reflecting Rezazadeh's plan for the entire ninety-four-acre parcel

was approved by the City in November 1978. Sometime after the City's annexation of the parcel, however, the entire ninety-four-acre parcel was rezoned R–1, restricting development principally to single-family housing. Rezazadeh "had no actual or constructive notice" of the City's intent to rezone the parcel, and he learned of the rezoning only after the fact.

After the annexation, Rezazadeh attempted to develop single-family housing on a twenty-one-acre portion of the property. The single-family residential lots did not sell well, and ultimately the bank that had financed Rezazadeh's development foreclosed and acquired those twenty-one acres. In 1980, Rezazadeh donated the remaining seventy-three-acre parcel to the Foundation, intending that the Foundation would sell the parcel to finance its religious mission. The seventy-three-acre parcel would have been worth $650,000 had the City permitted multi-family housing and commercial development on the property. The Foundation has been unable to sell the seventy-three-acre parcel, however. The parcel has been leased as farmland, but has otherwise remained undeveloped.

The City has denied three requests to rezone the seventy-three-acre parcel. In 1981, the Foundation petitioned the City for rezoning. The City Plan Commission did not endorse the rezoning request, and the Foundation withdrew it. In 1990, the Foundation again petitioned for rezoning. The City Plan Commission recommended approval of the 1990 rezoning petition, but the city council denied it. In 1996, the Foundation received a conditional offer to purchase the parcel, contingent on the parcel's rezoning to include multi-family housing. The prospective purchasers petitioned for rezoning. Again, the plan commission recommended approval, but the city council denied the petition.

765

The Foundation also alleges that the City commissioned two comprehensive development plans, one in 1982 and one in 1995, both of which recommended designating more land for multi-family and commercial use. The Foundation further alleges that from 1985 to 1997, the City has denied only one other petition for rezoning in addition to the Foundation's requests. Additionally, the Foundation contends in its complaint that "in fairly close proximity to" the seventy-three-acre parcel "many City lots or large parcels are zoned either R–2 or R–3 and several are immediately adjacent to lots zoned R–1."

After making these factual allegations, the Foundation's complaint pleads claims for violations of its rights under the federal and state constitutions, denominated as follows: "just compensation taking," "due process taking," "substantive due process," "equal protection," "freedom of religion," and "state inverse condemnation." Relief sought by the Foundation includes compensatory and punitive damages, an injunction against enforcement of existing zoning regulations, declaratory relief, and its costs and actual attorneys' fees.

The City's answer to the Foundation's original complaint included affirmative defenses that the Foundation had failed to comply with the notice of claim requirements of § 893.80, STATS., that its claims were barred by the statute of limitations, and that the complaint failed to state a claim upon which relief can be granted. The City filed a motion to dismiss grounded on these and other defenses, and in response, the Foundation filed an amended complaint. The City then filed a combined motion to dismiss, citing the statute of limitations defense, and answer to the amended complaint, which again pled failure to comply with § 893.80, the

statute of limitations, and failure to state a claim as affirmative defenses. The trial court treated the City's dismissal motion as being one for summary judgment, and granted it. The Foundation appeals.

## ANALYSIS

*I. Procedural Issues.*

We begin with the Foundation's procedural objections to the trial court's action on the City's motion to dismiss the Foundation's complaint. The Foundation contends that the City's original motion to dismiss for failure to state a claim was no longer properly before the court after the Foundation amended its complaint and the City filed its "Motion to Dismiss and Answer to First Amended Complaint." The Foundation cites § 802.06(2), STATS., which provides, in relevant part:

> (2) HOW PRESENTED. (a) Every defense, in law or fact . . . to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
>
> . . . .
> 6. Failure to state a claim upon which relief can be granted.
>
> . . . .
> 9. Statute of limitations.
>
> . . . .
> (b) A motion making any of the defenses in par. (a)1. to 10. shall be made before pleading if a further pleading is permitted.

The Foundation interprets this language to mean that a defendant may not file a motion to dismiss for failure to state a claim pursuant to § 802.06(2)(a)6 once the

defendant has filed an answer. We reject this interpretation.

We acknowledge that the language of § 802.06(2)(b), STATS., is somewhat confusing if read in isolation. When read in the context of other subsections of § 802.06, however, it becomes apparent that the provisions of § 802.06(2) serve simply to indicate which defenses a defendant may raise prior to, and in lieu of, filing an answer to a complaint. *See* § 802.06(1), which provides that "service of a motion under sub. (2)" alters the time period for answering a complaint, and that, if a pre-answer defense motion is denied, a defendant generally has ten days from notice of the denial to answer the complaint. Other subsections of the statute, moreover, make clear that a defendant who includes the defenses of failure to state a claim or statute of limitations in an answer does not forfeit the right to bring those defenses on for disposition by motion thereafter. Section 802.06(8)(b) provides, in relevant part, that

> [a] defense of statute of limitations, [and] failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or ordered under s. 802.01(1), or by a motion for judgment on the pleadings, or otherwise by motion within the time limits established in the scheduling order under s. 802.10(3).

Accordingly, we conclude that the City's motion to dismiss for failure to state a claim and on statute of limitations grounds was properly before the court, despite the City's having previously answered the amended complaint.

The Foundation also contends that the City's initial motion to dismiss, alleging failure to state a claim

and other grounds, was superseded by the City's "Motion to Dismiss and Answer to First Amended Complaint," which raised only the statute of limitations defense in the motion portion of the document. The Foundation argues that the latter motion was the "controlling motion," and the court should have considered only the statute of limitation issue. We disagree.

The City's answer to the Foundation's amended complaint restated its numerous defenses in a separate section entitled "Affirmative Defenses." Among these defenses was the following:

> 6. Defendants further answering by way of an affirmative defense applicable to all claims for relief herein allege that the plaintiffs have failed to state a claim upon which relief can be granted.

As we have noted above, § 802.06(8)(b), STATS., provides several ways for the City to bring its defense of failure to state a claim before the court. The City raised the defense in its answer to the Foundation's original complaint, again in its initial motion to dismiss, and again in its "Motion to Dismiss and Answer to First Amended Complaint." The City had clearly raised and preserved the issue of the complaint's failure to state a claim, and the Foundation offers no valid reason why the trial court could not take up the issue when it did.

Finally, the Foundation contends that the trial court erred by construing the City's motion to dismiss as a motion for summary judgment. The Foundation argues that, in employing summary judgment methodology, the court considered matters outside the pleadings, and gave weight to factual allegations contrary to those of the complaint. Because our review is de novo, however, any errors the trial court may have

committed in applying summary judgment methodology are irrelevant on appeal. We conduct the legal analysis afresh, unencumbered by the trial court's application of the methodology or its resulting conclusions. *See Waters v. United States Fidelity & Guar. Co.*, 124 Wis. 2d 275, 278, 369 N.W.2d 755, 757 (Ct. App. 1985).

■

Moreover, it is irrelevant for our purposes whether the trial court granted a motion to dismiss or for summary judgment, because our inquiry for each begins at the same place: we first examine the complaint to determine whether a claim for relief is stated. *See L.L.N. v. Clauder*, 209 Wis. 2d 674, 682, 563 N.W.2d 434, 438 (1997); *see also* § 802.08(2), STATS. When examining the sufficiency of a complaint, a court accepts as true all facts pleaded by the plaintiff and all inferences that can reasonably be derived from those facts. *See L.L.N.*, 209 Wis. 2d at 683, 563 N.W.2d at 438–39. Because we conclude, for the reasons discussed below, that the Foundation's complaint fails to state a claim for which relief can be granted, our inquiry ends and we need not consider any material outside the pleadings.[2]

## II. Substantive Issues.

The Foundation's complaint asserts numerous causes of action and theories of relief. The crux of the

[2] The City supported its motion to dismiss with affidavits to establish that the Foundation had not complied with the notice of claim requirements of § 893.80, STATS. The Foundation filed affidavits in response. We decide this appeal on the basis of the sufficiency of the Foundation's complaint, however, and we do not reach the notice of claim issue.

Foundation's arguments on appeal, however, is that the facts alleged in its complaint establish that its constitutional rights were violated by: (1) the taking of its property without compensation; (2) the denial of its right to substantive due process by arbitrary and oppressive government action; and (3) the denial of its right to equal protection of the laws. That is, all but one of the Foundation's causes of action stem from these three alleged constitutional claims. On appeal, the Foundation has not argued the viability of its remaining claim relating to the freedom of religion, and therefore we do not consider it. *See Waushara County v. Graf,* 166 Wis. 2d 442, 451, 480 N.W.2d 16, 19 (1992).

The City raised numerous defenses in the trial court to the Foundation's various causes of action. We need not consider most of these defenses, however. We conclude that the actions of the City, as alleged by the Foundation, do not violate the Foundation's rights under the federal and state constitutions. We do not address, and thus reach no conclusions regarding, whether some of the Foundation's claims are also barred by the Foundation's purported failure to comply with the notice of claim requirements, or by immunities enjoyed by some of the named defendants.

We do consider, however, the effect of statutes of limitations in order to identify which alleged actions by the City are proper subjects for our scrutiny. The Foundation alleges that its rights were violated by the City's "overall conduct" commencing with the annexation and rezoning of the ninety-four-acre parcel in 1978, and extending through the denials of its petitions for rezoning in 1981, 1990 and 1996. The Foundation argued in the trial court that the City's zoning decisions constituted a "continuing wrong," and accordingly, that the

Foundation's claims were not barred by any statute of limitations. *Cf. Sunnyside Feed Co. v. City of Portage*, 222 Wis. 2d 461, 588 N.W.2d 278 (Ct. App.), *review denied*, 222 Wis. 2d 676, 589 N.W.2d 630 (1998). Although the Foundation does not renew its "continuing wrong" argument on appeal, we note that zoning decisions are not generally deemed to constitute continuing wrongs that toll applicable statutes of limitations. *See, e.g., Scott v. City of Sioux City*, 432 N.W.2d 144, 147–48 (Iowa 1988).

The most generous period of limitation applicable to any of the Foundation's claims is six years. *See, e.g.*, § 893.53, STATS. (actions for injury to character or other rights); § 893.93, STATS. (statutory obligation without specified limitation period); *see also Hemberger v. Bitzer*, 216 Wis. 2d 509, 519, 574 N.W.2d 656, 660 (1998) (holding that six-year limitation under § 893.53, STATS., is applicable to claims brought under 42 U.S.C. § 1983). Thus, our review of the Foundation's claims is limited to those allegations surrounding the City's 1990 and 1996 denials of its rezoning petitions. Claims arising from earlier acts by the City are time barred, and we will not separately address any claim by the Foundation that its rights were violated by the City's act of rezoning the ninety-four-acre parcel in 1978. We do, however, consider the existing R–1 zoning of the parcel as it relates to claims that the later failures to rezone were constitutionally infirm.

### a. The taking claims.

 The Foundation contends that the R–1 zoning classification of the seventy-three-acre parcel constitutes a "taking" of its property, for which it has not received compensation, thus constituting a violation of Article I,

section 13 of the Wisconsin Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution. The Foundation further contends that the definition of "taking" varies under each of these constitutional provisions. We disagree. We concluded in *Zealy v. City of Waukesha*, 194 Wis. 2d 701, 709 n.3, 534 N.W.2d 917, 920 (Ct. App. 1995), *reversed on other grounds*, 201 Wis. 2d 365, 548 N.W.2d 528 (1996), that, although terminology may sometimes differ, the standards by which we determine whether government action constitutes a taking of property are the same under each of these provisions.[3]

In order to be considered a taking for which compensation is required under the Fifth Amendment, the challenged regulation must deny the landowner all or substantially all practical uses of the property. *See Zealy*, 201 Wis. 2d at 374, 548 N.W.2d at 531–32 (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992)). The City's zoning decisions undoubtedly reduced the potential economic value of the Foundation's land. But such a reduction in economic value—even if dramatic—does not constitute a taking when the owner is left with some beneficial use of the land and the reduction is the result of the City's legitimate exercise of its power over the pace and quality of development of the land within its jurisdiction. As the Supreme Court has made clear, the mere diminution in the value of the property does not constitute a taking. *See Concrete Pipe & Prods., Inc. v. Construction*

---

[3] The supreme court in *Zealy v. City of Waukesha*, 201 Wis. 2d 365, 374, 548 N.W.2d 528, 531–32 (1996), also concluded that, "although phrased in slightly differing terms in the cases," the same basic rule has emerged from the opinions of the state courts and the United States Supreme Court for determining whether a regulatory taking has occurred.

*Laborers Pension Trust*, 508 U.S. 602, 645 (1993) (citing cases finding no taking when property's value diminished by 75% or by 92.5%).

The Foundation has not been deprived of all or substantially all practical uses for its property. In this regard we note that the original R–2 zoning, which applied to the parcel prior to its annexation to the City, would not have permitted its commercial development, only a broader range of residential development. The City's refusal to remove the parcel from the R–1 classification in 1990 and 1996 does not prevent the use of the property for single-family residences and as farmland, the parcel's "historical" use. In *Zealy*, the City of Waukesha rezoned 8.2 acres of a 10.4 acre parcel into a "conservancy" classification, which prohibited most types of development, including residential. *See Zealy*, 201 Wis. 2d at 370, 548 N.W.2d at 530. Residential and business uses were still permitted on the remaining two-plus acres of the parcel. In denying the property-owner's taking claim, the supreme court noted that the 8.2 acres "may still be used for its historical use, farming. Viewed as a whole, the parcel retains a combination of residential, commercial, and agricultural uses." *Id*. at 380, 548 N.W.2d at 534. Similarly, the Foundation's parcel retains its historical agricultural use, and all seventy-three acres are available for single-family residential use.

■

The facts alleged in the Foundation's complaint simply do not add up to a taking of its property by the City. The Foundation has thus not stated a claim for violations of the Fifth and Fourteenth Amendments, or of Article I, section 13 of the Wisconsin Constitution, and our inquiry on these claims need proceed no further. *See id*. at 380–81, 548 N.W.2d at 534.

*b. The substantive due process claims.*

A plaintiff who wishes to pursue a claim for an alleged violation of the right to substantive due process embarks on a difficult undertaking, especially if the claim involves zoning or other real property regulatory actions by a governmental body. The analytical framework for evaluating such claims is a matter of controversy among the various circuits of the United States Court of Appeals. *See Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992). At least one panel of the Seventh Circuit has declared claims of substantive due process violations to be virtually unavailable in disputes such as the one before us. *See Gosnell v. City of Troy*, 59 F.3d 654, 657–58 (7th Cir. 1995).

The United States Supreme Court has "always been reluctant to expand the concept of substantive due process," and it has stated that "where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1714 (1998) (citations omitted). Here, as we have discussed above, the heart of the Foundation's complaint is that the City has violated the taking clauses of the federal and state constitutions. And, we analyze below whether the Foundation's right to equal protection of the laws has been violated on the pleaded facts—that is, whether the complaint sufficiently alleges that the City has arbitrarily and impermissibly treated the Foundation or its property differently than similarly situated persons or property. We conclude that the complaint is more properly analyzed as to its suffi-

775

ciency in pleading a proper claim for a taking or equal protection violation, as opposed to the more amorphous concept of a substantive due process violation. Nonetheless, we briefly address why the complaint fails to state a claim for a substantive due process violation.

■

Substantive due process as guaranteed under the Fourteenth Amendment protects citizens against the arbitrary action of government. *See Lewis*, 118 S. Ct. at 1716. But, the magnitude of the wrongful or improper governmental conduct which must be pled and proved to make out a constitutional violation is far greater than that which might suffice to provide a citizen relief from a zoning action in statutory or common law judicial review proceedings. *See Pearson*, 961 F.2d at 1221. A municipal body's adverse decision in a zoning matter may be set aside on certiorari review if the action is arbitrary, oppressive, or unreasonable, representing an act of will instead of judgment.[4] *See Marris v. City of Cedarburg*, 176 Wis. 2d 14, 23–24, 498 N.W.2d 842, 846 (1993). In order to prevail on a substantive due process claim, however, the claim must involve more than simply errors in law or the improper exercise of discretion by a governmental body.

---

[4] The Foundation's complaint does not seek certiorari review of the City's 1990 and 1996 refusals to rezone the parcel. Petitions for common law certiorari review are generally barred if not filed within six months of the adverse governmental action. *See State ex rel. Enk v. Mentkowski*, 76 Wis. 2d 565, 575–76, 252 N.W.2d 28, 32 (1977). The City's last denial of a petition for rezoning the parcel allegedly occurred on April 9, 1996, followed by a denial of a request for reconsideration on May 14, 1996. This action was not commenced until December 2, 1996.

The Supreme Court has indicated that, to qualify as a substantive due process violation, an "executive action" must "shock the conscience." *See Lewis*, 118 S. Ct. at 1717; *see also In re Paternity of J.L.H.*, 149 Wis. 2d 349, 359, 441 N.W.2d 273, 276 (Ct. App. 1989). Here, of course, the Foundation challenges the actions of a legislative body, not those of an executive branch official or administrative board. The Court in *Lewis* did not discuss a standard for evaluating a substantive due process challenge to a legislative action. The Sixth Circuit has noted, however, that the denial of a rezoning request for a specific parcel presents many characteristics of what it termed an "administrative action." *See Pearson*, 961 F.2d at 1221–23. In *Pearson*, the city had denied a property-owner's rezoning requests which were necessary to allow construction of a McDonald's restaurant. The court concluded that the "shock the conscience" terminology is "useful in the zoning context too, to emphasize the degree of arbitrariness required to set aside a zoning decision by a local authority—and to underscore the overriding precept that 'arbitrary and capricious' in the federal substantive due process context means something far different than in state administrative law." *Id.* at 1222. We find the Sixth Circuit's reasoning in *Pearson* to be persuasive, and thus we conclude that "shocks the conscience" is an appropriate standard by which to evaluate the substantive due process claim in this case.[5]

---

[5] This court has also perceived the dual nature of decisions by municipal governing bodies to grant or deny petitions to rezone individual parcels. "Zoning actions . . . because they affect the property rights of specific individuals, have traditionally been treated differently than general municipal legislation under both statute and case law." *Schmeling v. Phelps*, 212 Wis.

The Foundation alleges that the City's zoning actions violated the Foundation's substantive due process rights under the Fourteenth Amendment to the United States Constitution and under Article I, section 1 of the Wisconsin Constitution because those actions were "irrational and arbitrary." The Foundation alleges two facts in support of this contention. First, the City rezoned the original ninety-four-acre parcel sometime in 1978 contrary to an agreement with Rezazadeh to accept his proposed development plan. Second, the City refused to rezone the Foundation's seventy-three-acre parcel even though the City's own land-use and development plans recommended that more land be dedicated to multi-family and commercial use.

■

The City's violation of the purported agreement with Rezazadeh does not provide a basis for the Foundation's substantive due process claim. First, as we have noted, inquiry into the actions of the City in 1978 is barred by the statute of limitations. Furthermore, we note that the plaintiff in *Zealy* made a similar argument—specifically, that the city's representations during negotiations over a sewer easement led Zealy to believe that his land could be developed for residences in the future, and that the city should thus be equitably estopped from prohibiting residential development. *See Zealy v. City of Waukesha*, 194 Wis. 2d 701, 706, 718–20, 534 N.W.2d 917, 919, 924–25 (Ct. App. 1995),

---

2d 898, 911–12, 569 N.W.2d 784, 790 (Ct. App. 1997). We do not suggest that the "shocks the conscience" standard we presently employ to evaluate whether the City violated the Foundation's right to substantive due process applies where zoning legislation itself is being challenged. We do not address that issue in this opinion.

*reversed on other grounds*, 201 Wis. 2d 365, 548 N.W.2d 528 (1996). This court noted in its analysis of the issue that a "court cannot compel a political body to adhere to an agreement involving land use regulations when it has legitimate reasons for breaching." *Id*. at 720, 534 N.W.2d at 925.[6] The Foundation's complaint does not allege that the city's action in restricting its property to single-family residential development was grounded on illegitimate or corrupt reasons—such as the private gain of city officials. In short, there is nothing in the Foundation's complaint from which one could reasonably infer that the City's violation of its purported agreement with Rezazadeh served any purpose other than that of controlling development within the city, a legitimate government function.

Similarly, the Foundation's allegation that the city council's denial of the rezoning petitions contravenes the City's own development plans does not rise to the "conscience-shocking" level necessary to make out a substantive due process violation. The Foundation alleged that the city council decided not to rezone the Foundation's property for multi-family and commercial use even though the City's development plans had recommended that more property be devoted to that use, and even though the planning commission had recommended approval of the 1990 and 1996 rezoning petitions. If we were to conclude that these allegations were sufficient to state a substantive due process claim, we would effectively nullify the city council's

[6] On review in the supreme court, Zealy apparently abandoned his equitable estoppel argument and argued instead that he had acquired a vested right to the former residential zoning of his parcel based on the city's representations. The court rejected the claim. *See Zealy v. City of Waukesha*, 201 Wis. 2d 365, 381–82, 548 N.W.2d 528, 534–35 (1996).

authority, as the ultimate maker of land-use policy for the City, to approve or deny the recommendations of its consultants and of the planning commission.

In sum, given the absence of allegations of some type of outrageous or malicious behavior, the Foundation has not stated a claim for a substantive due process violation. The Foundation essentially alleges that the City's decisions on the Foundation's petitions were unwise, but it has not alleged any facts concerning the City's actions which "shock the conscience." We thus conclude that the allegations of the complaint are insufficient to cause the debate over the propriety of these zoning decisions to be moved from the legislative arena to the judicial.

 c. *The equal protection claims.*

Finally, the Foundation contends that the City, in refusing to rezone the Foundation's property, treated the Foundation differently from other property owners "for no rational reason," thereby violating its right to equal protection of the laws, as guaranteed by the federal and state constitutions. The Foundation acknowledges that its claim does not involve a fundamental right or a suspect classification. The Foundation also recognizes that, accordingly, the City's differential treatment of the Foundation's property must be upheld unless it is "wholly unrelated to any legitimate state objective," *Schmeling v. Phelps*, 212 Wis. 2d 898, 919, 569 N.W.2d 784, 793 (Ct. App. 1997), or if the City treated its land differently than similarly situated property, with no reasonable basis for distinction, *see Kmiec v. Town of Spider Lake*, 60 Wis. 2d 640, 652, 211 N.W.2d 471, 476–77 (1973). The Foundation's

complaint must allege facts tending to show that it was the object of differential treatment for improper or unlawful reasons. *See Schmeling*, 212 Wis. 2d at 919, 569 N.W.2d at 793. We conclude that the allegations of the Foundation's complaint do not do so.

The complaint alleges two facts in support of the Foundation's equal protection claim: (1) between 1985 and 1997, the City granted all rezoning requests except for the Foundation's two requests relating to its seventy-three-acre parcel, and one other request; and (2) many city lots or large parcels "in fairly close proximity" to the seventy-three-acre parcel are zoned R–2 or R–3, and several are "immediately adjacent to lots zoned R–1." Thus, although the Foundation's complaint alludes to differential treatment, it does not allege that the City has granted petitions to rezone property adjacent to its parcel from R–1 to R–2 or R–3 while denying the Foundation's requests. In fact, the complaint alleges no facts whatsoever regarding the rezoning requests granted by the City, such as their proximity to the Foundation's parcel or the nature of the classification changes granted, from which one might infer arbitrariness or irrationality in the City's denial of the Foundation's requests.

■■■■■■ As for the existence of property zoned R–2 or R–3 "in fairly close proximity" to the Foundation's property, the supreme court has recognized that boundaries must be drawn somewhere, and that their placement is properly left to the appropriate legislative body, not the courts. *See State ex rel. American Oil Co. v. Bessent*, 27 Wis. 2d 537, 546–48, 135 N.W.2d 317, 323 (1965) (concluding that "[b]oundaries of districts must be drawn somewhere if there are to be districts," and noting that the zoning of one side of a street for purposes not per-

mitted on the other side is not invalid per se). Also, the vagueness of the allegation falls far short of making out an allegation of "spot zoning," which could constitute an equal protection violation. *See Buhler v. Racine County,* 33 Wis. 2d 137, 145–46, 146 N.W.2d 403, 407 (1966).

■

As we explained in *Schmeling v. Phelps,* allegations such as those in the Foundation's complaint are insufficient to establish a constitutional violation:

> In order to require a government official or governing body to justify why a certain legislative decision was made in one instance but not in others, more is needed than simply a showing that different decisions were made on different occasions. *See Nick v. State Highway Comm'n,* 21 Wis. 2d 489, 496, 124 N.W.2d 574, 577 (1963) ("mere inconsistency" does not rise to level of equal protection violation).

*Id.* at 920, 569 N.W.2d at 793. When only the wisdom or desirability of certain zoning decisions is attacked, constitutional protections are not implicated and a court's role is extremely limited. *See Buhler,* 33 Wis. 2d at 146–47, 146 N.W.2d at 408. The Foundation's complaint fails to state an equal protection claim because it alleges no basis for believing that City was guilty of anything beyond inconsistency in its decisions on the Foundation's requests to rezone its parcel.

## CONCLUSION

For the reasons discussed above, we conclude that the Foundation's complaint fails to state a claim upon which relief can be granted. Accordingly, we affirm the trial court's judgment in favor of the City.

782

*By the Court.*—Judgment affirmed.